IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION


ELIAS GONZALEZ-GONZALEZ                §
                                       §
v.                                     §          2:12-CV-0188
                                       §
UNITED STATES OF AMERICA               §


## REPORT AND RECOMMENDATION
## TO DENY MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Defendant ELIAS GONZALEZ-GONZALEZ has filed a Motion to Vacate, Set Aside or

Correct Sentence by a Person in Federal Custody.  For the reasons hereinafter expressed, the

undersigned Magistrate Judge is of the opinion defendant's claims are without merit and

recommends those claims be DENIED.


I.
FACTUAL AND PROCEDURAL HISTORY

Defendant is a citizen of Mexico.  On August 27, 1990, an Order of Deportation was entered

directing his removal from the United States.  On August 28, 1990, defendant was removed

pursuant to that Order.

At some point, defendant re-entered the United States and, on January 21, 1993, was

convicted of an April 29, 1992 offense of Delivery of a Controlled Substance, committed in the

United States.  He was sentenced to an 8-year term of imprisonment in the Texas Department of

Criminal Justice.  The record before this court does not reflect that defendant was again removed

from the United States upon his release to state parole in November 1993, or upon discharge of his

state sentence in 2001.

On June 14, 2002, however, defendant was arrested after again being found in the United States unlawfully.  On that same date, the Immigration and Naturalization Service (INS) entered its Notice of Intent to reinstate defendant's prior Order of Deportation from August 27, 1990 pursuant to section 241of the Immigration and Nationality Act (INA).  The INS found defendant was removable as an alien who had illegally reentered the United States after having been previously removed under an order of deportation and, therefore, was subject to removal by reinstatement of the prior order.  Defendant was advised he could contest the determination by making a written or oral statement.

On November 21, 2002, in "Acknowledgment and Response" to the INS's notice of intent to reinstate his prior Order of Deportation, defendant indicated he did not "wish to make a statement contesting" the INS's determination that he was subject to removal by reinstatement of the prior Order of Deportation, however, in the space for his signature, defendant wrote "requested an attorney."  On November 26, 2002, after reviewing "all available evidence, the administrative file and any statements made or submitted in rebuttal," the INS determined defendant was "subject to removal through reinstatement of the prior order" and reinstated the prior Order of Deportation.

Contemporaneously with the reinstatement proceeding, defendant was charged with the federal offense of Illegal Reentry of an Alien pursuant to 8 U.S.C. § 1326(a).  *United States v. Gonzalez-Gonzalez*, No. 2:02-CR-43.  On August 5, 2002, defendant pleaded guilty to the charge and, on November 8, 2002, was sentenced to an 8-month term of imprisonment in the Bureau of Prisons.  On February 10, 2003, after serving his federal sentence, defendant was again removed from the United States pursuant to the reinstatement of the August 27, 1990 deportation order.

Defendant again re-entered the United States after the 2003 removal.  As noted in the

Presentence Investigation Report issued in this case on November 23, 2011:

> On June 30, 2011, [defendant] was arrested by an officer with the Cactus Police Department in Cactus, Texas, for charges of Driving While Intoxicated and Fraudulent Use/Possession of Identifying Information.  The police department contacted the ICE Office in Amarillo, Texas, and an immigration detainer was placed on [defendant].  However, on July 15, 2011, [defendant] was mistakenly released from custody on a personal recognizance bond.  On August 23, 2011, ICE agents became aware of [defendant's] release from jail and enlisted the assistance of Texas Ranger Phillip Ditto to locate him.  On August 24, 2011, ICE agents arrested [defendant] at his upholstery business located at 111 East Eighth Street, Dumas, Texas, and he was transported to the ICE Office in Amarillo, Texas.
>
> Upon arrival at the ICE Office, agents entered [defendant's] fingerprints into the database and conducted a records checks.  Agents confirmed [defendant] is a citizen of Mexico and in the United States illegally.  Records revealed [defendant] was convicted on January 21, 1993, in the 69th Judicial District Court of Moore County, Texas, of Delivery of Cocaine, Case No. 2427, and was sentenced to eight years imprisonment.  On February 10, 2003, [defendant] was removed from the United States at Del Rio, Texas.  Records checks indicated [defendant] had not obtained the consent of the Attorney General of the United States or his successor, the Secretary of Homeland Security, to apply for readmission into the United States.

*Presentence Investigation Report* (November 23, 2011) at 4.

On August 25, 2011, INS entered its Notice of Intent to reinstate defendant's prior Order of

Deportation from August 27, 1990 pursuant to section 241 of the INA.  Defendant signed an

"Acknowledgment and Response" form indicating he did not "wish to make a statement contesting"

the INS's determination that he was subject to removal by reinstatement of the prior Order of

Deportation.  On that same date, after reviewing "all available evidence, the administrative file and

any statements made or submitted in rebuttal," the INS determined defendant was "subject to

removal through reinstatement of the prior order," and reinstated the prior Order of Deportation.

On August 29, 2011, defendant was charged by complaint with the felony offense of Illegal

Re-entry after Deportation in violation of 8 U.S.C. § 1326.  The Federal Public Defender was

appointed to represent defendant.  On September 13, 2011, defendant was charged by indictment

with the same offense.  The indictment alleged defendant had previously been deported and

removed from the United States on or about February 10, 2003, defendant's second removal after

reinstatement of his prior Order of Deportation from August 27, 1990.

On October 20, 2011, defendant pled guilty to the unlawful re-entry offense as charged in the

indictment.  Pursuant to a Plea Agreement, defendant stipulated to the accuracy of the Factual

Resume, acknowledged his plea of guilty was freely and voluntarily made and not the result of

promises apart from those set forth in the plea agreement, recognized that pleading guilty may have

consequences with respect to his immigration status, but that he wanted to plead guilty regardless of

any immigration consequences his plea may entail, even if the consequence was his automatic

removal from the United States.  Defendant further stated that after thoroughly reviewing all legal

and factual aspects of his case with his lawyer, he was fully satisfied with his lawyer's

representation.  Defendant averred he had "received from his lawyer explanations satisfactory to

him concerning each paragraph of this plea agreement, each of his rights affected by this agreement,

and the alternatives available to him other than entering into this agreement," and that after

conferring with his lawyer, concluded it was in his best interest to enter into the plea agreement and

plead guilty rather than proceed to trial because he was, in fact, guilty of the charged offense.  On

that same date, defendant confirmed the terms of the Plea Agreement in open court and the Court

accepted defendant's plea and the plea agreement and ordered a Presentence Investigation Report

(PSR).

On November 23, 2011, the United States Probation Officer filed the PSR reporting

"defendant revealed he [had] never obtained legal resident status to remain in the United States."

The PSR found immigration records confirmed defendant had never applied for legal status, that he was an illegal alien, and had been deported to Mexico on August 28, 1990 and on February 10, 2003.

The PSR reflected the following calculations:  The base offense level for defendant's illegal re-entry offense was 8.  The base offense level was increased by 16 levels because "defendant unlawfully remained in the United States after a conviction for a felony that is a drug trafficking offense for which the sentence imposed exceeded 13 months," to wit:  defendant's January 21, 1993 state conviction for delivery of cocaine and resulting 8-year sentence.  Three (3) offense levels were subtracted due to defendant's acceptance of responsibility, resulting in a total offense level of 21.

In defendant's criminal history calculation, three (3) points were assessed for the 1993 delivery of cocaine conviction (the same conviction which was the basis for the 16-level increase in the Offense Level Computations).  Defendant was also assessed an additional two (2) points for a November 2002 conviction for Illegal Re-Entry entered by this federal court, for which he received an 8-month sentence of imprisonment.  Defendant's adult criminal convictions resulted in a criminal history score of 5 and a Criminal History Category of III.  Defendant's Criminal History Category and Total Offense Level resulted in a guideline imprisonment range of 46 to 57 months.

The PSR also set out factors that might warrant departure from the advisory guideline range:

[A] downward departure may be appropriate on the basis of cultural assimilation.  The defendant has formed cultural ties and has resided in the United States since age 13.  [At the time of the PSR, defendant was 41 years old].  The primary reason the defendant returned to the United States is to reunite with his wife and children.  The defendant's mother and siblings all reside in Texas.  Since the defendant's return to the United States in 2003, his only conviction has been for a Criminal Trespass charge.  He does have a pending DWI charge as well.  The defendant manages his own business and is a home owner.  A departure based on cultural assimilation will not likely increase the risk to the public from further crimes of the defendant.

The PSR concluded there were no known factors that warranted a sentence outside the advisory guideline system.

On December 13, 2011, defendant filed objections to the PSR noting that in 2005, defendant made "an effort" to file a petition for an immigrant visa, correcting and adding additional information concerning defendant's children, and clarifying circumstances surrounding defendant's termination of employment in 2002.  Defendant stated he had:

> [N]o objections to the proposed calculations of the sentencing guidelines contained in the PSR and certainly concurs that pursuant to U.S.S.G. § 2L1.3, a downward departure based upon cultural assimilation would clearly be appropriate in this case.  Owning his own home and his own business, Gonzalez-Gonzalez made a positive impact on his family and community.  In fact, he was recognized as a Citizen Hero in 2008 for "selflessly risking his own life to attempt to save the life of another person in a submerged vehicle in Martin  Road Lake on May 18, 2008."

On December 19, 2011, an addendum to the PSR was submitted noting defendant's wife did file a petition to obtain an immigrant visa for defendant in 2005, but that the fee for the petition was never submitted and defendant was not granted legal status.  The addendum also added the additional information concerning defendant's children and defendant's clarification regarding previous employment.

On January 24, 2011, the District Judge conducted a sentencing hearing.  At the hearing, defendant acknowledged the PSR was "correct" and "[e]verything okay."  Tr. 5.  At the hearing, defense counsel argued defendant's case was appropriate for, and factors justified, a downward departure on the basis of cultural assimilation and requested the court sentence defendant below the advisory guideline sentencing range.  Despite defense counsel's argument, the District Judge sentenced defendant to a term of 48-months imprisonment, the bottom end of the advisory guideline

sentencing range.  The District Judge explained, on the record, why this sentence was assessed:

> Now, the Court set your penalty at the bottom of the guidelines.  Although you returned to the United States in 2003 just after you were deported, you have eight years worked and supported a family and had little contact with law enforcement.  On the other hand, you have law violations since returning to the United States.
>
> The Court nevertheless believes that the Court's objectives of punishment and deterrence can be met by the bottom of the guidelines, which is forty-six months.  The Court has ordered three years' supervised release, in part to be sure that you remain outside of the United States if you are deported.

Tr. 10-11.  Defendant did not appeal his conviction and sentence to the United States Court of Appeals for the Fifth Circuit.

On August 30, 2012, defendant filed this Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  The government filed a response in opposition to the motion to vacate on October 16, 2012.  Defendant filed a reply to the government's response on October 29. 2012.

## II.
## DEFENDANT'S ALLEGATIONS

Defendant appears to present the following claims seeking to vacate the sentence imposed in this case:

Defendant was denied his constitutional right to effective assistance of counsel because trial counsel failed to:

1.  argue for dismissal of the charges on the basis that defendant's second deportation in 2003 was based upon his stipulation to reinstate the prior (1990) order of deportation rather than after a full deportation hearing subject to judicial review;

2.  object to the inclusion of defendant's 2003 state delivery of cocaine conviction in calculating defendant's criminal history score on the basis of remoteness or because the conviction was stale or old; or

3.      argue for a downward departure on the basis that the Northern District of
        Texas does not have a fast track program.


III.
STANDARDS OF REVIEW

In its response, the government fully and accurately sets out, at pages 2-3, the appropriate

standard of review for motions brought under 28 U.S.C. § 2255, including the heavy burden on the

petitioner when he has pled guilty, presumptions of verity of in-court declarations, and the

reservation of such motions for transgressions of constitutional rights that could not be raised on

direct appeal and which result in a complete miscarriage of justice.


IV.
EFFECTIVENESS OF COUNSEL

The government has accurately set out, at pages 3-5, the appropriate standard of review for

claims of ineffective assistance of counsel.  These standards and limitations are applicable to this

case.


A.  Counsel's Failure to Move for Dismissal of Charges

On August 27, 1990, an Order of Deportation was entered directing defendant's removal

from the United States and, on August 28, 1990, defendant was removed from this country pursuant

to that Order.  Defendant does not, in this proceeding, challenge the 1990 deportation proceeding or

the 1990 Order of Deportation as invalid for any reason, nor does he allege it did not satisfy due

process, or was unconstitutional in any manner.

On June 14, 2002, after defendant was again found in the United States unlawfully, the INS

entered its Notice of Intent to reinstate that prior August 27, 1990 Order of Deportation pursuant to

section 241(a)(5) of the INA.  Section 241, entitled "Reinstatement of removal orders against aliens

illegally reentering," provides in part:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

INA § 241(a)(5), 8 U.S.C. § 1231(a)(5).[1]  Defendant was advised of the INS's determination that he was removable as an alien who had illegally reentered the United States after having been previously removed under an order of deportation and, that he was subject to removal by reinstatement of the prior order.  Defendant was advised he could contest the determination by making a written or oral statement.  Defendant indicated he did not "wish to make a statement contesting" the INS's determination (although he did write in the space provided for his signature, "requested an attorney").  Defendant was also advised he did not have a right to a hearing before an immigration judge and, consequently, he was not provided such a hearing.  On November 26, 2002, defendant's August 27, 1990 Order of Deportation was reinstated.  Defendant did not seek review of the reinstatement order by a petition for review to the 5th Circuit Court of Appeals.[2]  On February

---

[1] Congress intended reinstatement to be a different and far more summary procedure than removal.  Under INA § 240, first-instance removal proceedings involve a broad inquiry.  The scope of a reinstatement inquiry under INA § 241 is much more narrow than the inquiry under INA § 240 first-instance removal, and can be performed like any other ministerial enforcement action.  Essentially the only questions are whether the individual is the identified alien, whether the alien is subject to a prior removal order, and whether the alien has illegally reentered the United States, in addition to whether the alien has presented evidence of any claim of asylum.  INA § 241(a)(5), 8 U.S.C. § 1231(a)(5); 8 C.F.R. § 241.8.  Reinstatement of a prior deportation order under section 241 does not provide for a hearing before an immigration judge.  In fact the section limits the alien's rights and ensures subsequent removals are carried out expeditiously.  After a reinstatement, INS is allowed to remove the alien without additional proceedings.  *Ramirez-Molina v. Ziglar*, 436 F.3d 508, 511 (5th Cir. 2006).

[2] Although the reinstatement procedure is more restrictive than an initial removal proceeding, reinstatement orders under INA § 241 can be reviewed by federal appellate courts by petition for review.  *See Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292, 295 (5th Cir. 2002).  The reinstatement procedures thus do not deprive an individual of the opportunity for judicial review.  *See United States v. Fuentes-Salgado*, 207 Fed. Appx. 391 (November 28, 2006).

10, 2003, defendant was again removed from the United States pursuant to the 1990 Order.[3]

Defendant does not challenge the 2003 reinstatement proceeding or allege any deficiencies in that proceeding, nor does defendant attack the reinstatement of the 1990 Order of Deportation. Similarly, defendant does not challenge the underlying 1990 Order of Deportation. Instead, defendant, relying on *United States v. Mendoza-Lopez*, 481 U.S. 828, 107 S.Ct. 2148 (1987),[4] argues the second deportation in February 2003, which is the deportation referenced in the 2011 indictment to which defendant pled guilty, could not serve as the basis of the illegal re-entry charge or as an element of the illegal re-entry offense. Specifically, defendant appears to contend the lack of a full deportation hearing during the 2003 reinstatement of his 1990 Order of Deportation, and the denial of judicial review of the reinstatement, rendered the 2003 deportation ineligible to "support a prosecution under 8 U.S.C. § 1326."[5]  On that theory, defendant argues counsel was deficient for failing to seek dismissal of the Illegal Re-entry charges against him, and that defendant was prejudiced by counsel's actions because the indictment would have been dismissed if counsel had challenged it.

*Mendoza-Lopez*, the case relied upon by defendant, concerns a first-instance removal as the basis for an illegal re-entry prosecution, not an expedited reinstatement of a prior Order of Deportation. The reinstatement of a prior order of deportation under INA § 241 does not provide an

---

[3]A second removal based on the reinstatement of a prior removal order is a separate removal from the original removal order and subjects the alien to the enhanced penalties of 8 U.S.C. § 1326(b).  *United States v. Nava-Perez*, 242 F.3d 277, 279 (5th Cir. 2001).

[4]*Mendoze-Lopez* held indictments for illegal re-entry under 8 U.S.C. § 1326 are subject to dismissal where the underlying deportation proceeding, which serves as an element of the criminal offense, was not conducted in conformity with due process and "effectively eliminate[d] the right of the alien to obtain judicial review" of the deportation proceeding.

[5]Defendant also appears to argue the 2003 removal order could not have been used, for the same reasons, to support an increase to his base offense level under USSG § 2L1.2(b).  The 16-level increase under this provision of the guidelines, however, was assessed based on a prior drug trafficking offense, not because of the entry of a prior order of removal.

alien subject to reinstatement the same rights and procedural protections as an alien facing removal for the first time.  Consequently, it is not clear that a prior deportation order alleged as an element of the charged offense, if the result of an expedited reinstatement, is subject to challenge in the prosecution for the illegal re-entry offense.  Nonetheless, the undersigned will address defendant's claim.

In *Mendoza-Lopez*, the United States Supreme Court held that a defendant being criminally prosecuted for illegal re-entry must be allowed to collaterally attack a previous underlying removal order under certain circumstances.  *Id.* at 838-39.  To implement this holding, 8 U.S.C. § 1326 was amended to allow a defendant in an illegal re-entry criminal prosecution to challenge the validity of the underlying deportation order, but <u>only</u> when the defendant has demonstrated:

(1)     the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2)     the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3)     the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).  The Fifth Circuit has required a defendant to show any procedural deficiencies in the previous removal proceeding caused "actual prejudice" to the defendant.  *United States v. Lopez-Vasquez*, 227 F.3d 476, 483 (5th Cir. 2000).

Defendant has not met any of the criteria outlined above to allow he or counsel to challenge the validity of the 2003 reinstatement of the 1990 deportation order.  Instead, defendant merely alleges he had no judicial review of the 2003 deportation order due to his stipulation to removal, not that he was <u>improperly</u> deprived of the opportunity for judicial review.  Because defendant has not demonstrated the reinstatement procedures effectively eliminated his right to seek judicial review of

the removal order, this court need not address the other factors required to mount a collateral attack

on the deportation order.  *Cf. United States v. Fuentes-Salgado*, 207 F. App'x 391, 393 (5th Cir.

2006).  Even so, defendant has not demonstrated he exhausted any administrative remedies with

regard to the 2003 reinstatement of the deportation order, nor does he demonstrate the 2003

reinstatement was erroneous, much less fundamentally unfair.  Defendant has not demonstrated any

procedural deficiencies in the 2003 reinstatement proceeding, nor has he shown he suffered actual

prejudice from any procedural deficiencies in that proceeding.  Defendant has not shown he could

have met the criteria to challenge the validity of the 2003 reinstatement of the 1990 deportation

order, that the 2003 resintatement was invalid, or that counsel was deficient for failing to attempt to

challenge his illegal re-entry prosecution on the basis of a prior invalid deportation order.  Further,

defendant makes no similar allegations with regard to the 1990 deportation order, a previous order

which alone would have also supported his prosecution for illegal re-entry.  Defendant's first ground

is without merit and should be denied.

B.  Counsel's Failure to Object to Use of
Prior Conviction in Guideline Calculations

Prior to the prosecution of the federal conviction challenged here, defendant committed the

state felony offense of Delivery of Cocaine.  On January 21, 1993, defendant was convicted of the

offense and sentenced to 8 years in state prison.  On November 24, 1993, defendant was released

from incarceration to parole.[6]  On January 19, 2001, defendant discharged his 8-year state sentence.

On February 10, 2003, defendant was deported after serving his 8-month federal sentence for

---

[6]The record does not disclose why defendant was not subject to deportation proceedings upon his release.

Illegal Reentry.  Defendant reported to the U.S. Probation Officer that he "re-entered the United

States a few months after he was deported," therefore, presumably on or about <u>May 2003</u>.

*Presentence Investigation Report* (November 23, 2011) at 8.

The PSR added 3 points under the first sentence of USSG § 4A1.2(e)(1) for defendant

having a "prior sentence of imprisonment exceeding one year and one month that was imposed

within fifteen years of the defendant's commencement of the instant offense," *i.e.*, defendant's 8-

year sentence of imprisonment being imposed on January 21, 1993, within the 15-year period prior

to May 2003, the date defendant re-entered the country illegally and the commencement of his

Illegal Reentry offense.  *See United States v. Del Carmen*, 368 Fed. Appx. 615, 616-18 (5th Cir.

2010) (looking to date of re-entry as the date of the beginning of the commission of the illegal re-

entry offense when computing time under the sentencing guidelines).  Defendant did not file any

objections to the 3-point assessment, nor did the court or defense counsel discuss the propriety of

including the 1993 sentence in the criminal history or for assessing points for the conviction at the

sentencing hearing.

The PSR also noted "defendant unlawfully remained in the United States after a felony drug

trafficking conviction for which the sentence imposed exceeded 13 months," to-wit:  the January 21,

1993 Delivery of Cocaine conviction.  The PSR added 16 levels to defendant's offense level

computation for this conviction pursuant to USSG § 2L1.2(b)(1)(A)(I) (which provides that a drug

trafficking offense results in a 16-level increase to the base offense level if criminal history points

were assessed for that conviction).

By his second ground, defendant appears to first argue counsel was deficient for failing to

object to the inclusion of, and 3-point assessment for, defendant's 1993 delivery of cocaine sentence

in calculating defendant's criminal history score because the conviction was too "stale/old" to be counted in his criminal history.[7]  Defendant appears to contend counsel was deficient for failing to object to the inclusion of the conviction in his criminal history, and that he was prejudiced by counsel's deficiency because of the 3-point assessment.

The 1993 sentence was properly counted in defendant's criminal history under the <u>first</u> sentence of the guideline provision which required counting based upon the imposition of defendant's 8-year sentence on January 21, 1993, within the 15-year period prior to defendant's <u>commencement of</u> the instant illegal re-entry offense in May 2003.  Defense counsel had no basis to object to the inclusion of defendant's 1993 sentence in his criminal history and was not deficient in failing to do so.  *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (counsel is not required to make frivolous objections).

Defendant's argument that counsel was ineffective for failing to object to the PSR's 16-point assessment in his offense level computation because the inclusion of the 1993 conviction in defendant's criminal history was wrongful is also foreclosed.  Because the 1993 conviction was properly included in defendant's criminal history, defendant's argument that he should have been assessed only a 12-level increase in his offense level computation under § 2L1.2(b) is without merit. Any objection by counsel to the 16-level increase would have been frivolous.

Defendant further argues, in his petition and predominately in his reply, that the inclusion of the 3-point increase in his criminal history and the additional 16-point increase in his offense level computation triggered by the same conviction resulted in a substantially unreasonable,

---

[7]On page 6 of his October 29, 2012 reply to the government's response, defendant acknowledges his "drug trafficking prior conviction is not too old to receive Criminal History points."

disproportionally harsh, and grossly unjust sentence for an illegal re-entry offense.  Defendant

argues it was thus unreasonable for the trial court "to adhere [to] the guidelines sentence."  While

defendant, in his reply to the government's answer, references law review articles and various

commentaries critical of the sixteen level enhancement, the guidelines have not eliminated that

enhancement and continue to provide for it.  Defendant has not shown any constitutional error in the

assessment of his sentence.  Defendant's second ground is without merit and should be DENIED.


### C.  Failure to Argue for Downward Departure Based on the Lack of a "Fast Track" Removal Program

Section 5K3.1 of the United States Sentencing Guidelines provides:

> Upon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides.

The determination of whether, where and when a fast track program is established in a judicial

district is left to the prosecutorial discretion of the United States Attorney General.  At the time

defendant was sentenced on January 25, 2012, the Northern District of Texas did not have an early

disposition program or "fast track program" as referenced by section 5K3.1.[8]  The presence of a fast

track program "dictates whether a defendant has an opportunity to be offered early disposition under

[the] fast track program."  *United States v. Gomez-Herrera*, 523 F.3d 554, 561 (5th Cir. 2008).  Here,

the district judge did not and could not have given defendant a fast track reduction under USSG §

---

[8]Districts prosecuting felony illegal re-entry cases were instructed to implement the United States Department of Justice's policy on early disposition of "fast-track" programs no later than March 1, 2012.  *See Memorandum for all United States Attorneys*, from James M. Cole, Deputy Attorney General, dated January 31, 2012, concerning Department Policy on Early Disposition or "Fast-Track" Programs.

5K3.1 because <u>there was no fast track program</u> in this district at the time of defendant's sentencing.

Defendant nonetheless argues counsel was deficient because she did not request and argue that the court should depart downward when sentencing defendant due to the <u>lack of</u> a "fast track" removal program within the Northern District of Texas.  Defendant argues the absence of a fast track program did not prevent counsel from requesting a downward departure, and that the court had the "authority to deviate from [the] sentencing guidelines on the basis of the [sentencing] disparity caused by those [districts with such] programs."  Defendant maintains that if he had been arrested in a "fast track" district, he would have been eligible to receive a 4-level reduction.  He contends that had counsel argued the absence of a program in this district resulted in unwarranted sentencing disparities, the court may have taken into account the sentencing practices of other courts and treated him similarly to a defendant in a "fast track" district.

Any argument by counsel that defendant should be afforded a downward departure based on a perceived disparity of sentences assessed by districts with such programs would have been to no avail as it has been determined that any sentencing disparities resulting from fast track disposition programs was, in fact, "intended by Congress."  *Id*. at 563.  Moreover, and critically, defendant has not shown he would have been eligible to receive, or would have been otherwise entitled to, a departure and a fast-tract sentence in a district offering an early disposition program or "fast-track program,"[9] or what his likely imprisonment range would have been in that district and how it would have been substantially lower than his range in this district.  *Cf. United States v. Ramirez*, 675 F.3d

---

[9] 'Even in a fast track jurisdiction, a defendant is not automatically entitled to the benefits of the program." *United States v. Gomez-Herrera*, 523 F.3d 554, 561 (5th Cir. 2008).  Defendant has not demonstrated he would have offered to meet the minimum requirements for participation in a fast track program, *i.e.*, that he enter into a plea agreement, agree to a factual basis, agree not to file any of the motions described in Fed.R.Crim.P. 12(b)(3), agree to waive appeal, and agree to waive the opportunity to challenge his conviction under 28 U.S.C. § 2255.  *See id*.

634 (7th 2011).  Defendant has not shown his prosecution in this district resulted in a sentencing disparity, nor has he demonstrated this Court would have granted any such request for downward departure based on a sentencing disparity argument.

Lastly, for purposes of argument, when the fast track program was implemented in this district shortly after defendant's sentencing, the United States Attorney retained the discretion to limit or deny a defendant's participation in the fast track program based on the defendant's prior violent felony convictions, including prior drug trafficking offenses, and on the defendant's number of prior deportations and prior convictions for illegal re-entry.  Here, defendant had previously been convicted of delivery of a controlled substance, had been twice deported, and had been convicted of illegal re-entry.  It is questionable whether defendant would have been eligible to participate in the subsequently implemented fast track program, and likely that the government would have exercised its prosecutorial discretion <u>not</u> to offer defendant a fast track plea deal.  *Cf. Vitela v. United States*, No. 2:14-CV-0001 (N.D.Tx.–Amarillo Division).

Defendant has failed to demonstrate he has been prejudiced by any inaction of counsel in failing to request the court depart downward in assessing defendant's sentence.  Counsel was not deficient for failing to raise an argument without any merit.  *Cf. United States v. Marmolejos-Agramonte*, No. 3:05-CR-1040-ALL, 2007 WL 2438244 (5th Cir. Aug. 22, 2007) (counsel was not ineffective for failing to request a fast track reduction in a district that did not have such a program because it would have been a meritless argument).  Defendant's third ground is without merit and should be DENIED.

V.

RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States

District Judge that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by

a Person in Federal Custody filed by defendant ELIAS GONZALEZ-GONZALEZ should be

DENIED.


VI.

INSTRUCTIONS FOR SERVICE and NOTICE OF RIGHT TO OBJECT

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this ____12th____ day of August 2015.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).